| | |
|---|---|
| CRYSTAL WILLIAMS<br><br>  Plaintiff,<br><br>v.<br><br>TWOROG HOLDING, LLC, d/b/a<br>AARON'S,<br><br>  Defendant. | Civil Action No. 1:22-cv-965<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Crystal Williams ("Ms. Williams" or "Plaintiff"), hereby complains and alleges against Defendant, Tworog Holding, LLC, d/b/a Aaron's ("Defendant" or "the Company") the following:

## INTRODUCTION

1. Plaintiff brings this action against Defendant for violations of the Fair Labor Standards Act ("FLSA"), as codified under 29 U.S.C. §201, *et seq.*, the Families First Coronavirus Response Act ("FFRCA"), and for violation of North Carolina Public Policy.

2. Defendant violated Plaintiff's rights by terminating her after contracting the COVID-19 virus and taking sick leave under the FFRCA and in violation of public policy for filing for and collecting unemployment benefits pursuant to the CARES Act and Executive Order No. 118, Sections 2-3.

## THE PARTIES

4. Plaintiff Crystal Williams is a citizen of the United States subject to the jurisdiction of this Court.

1

5. Defendant is a North Carolina corporation with headquarters in Albemarle, North Carolina.

## JURISDICTION AND VENUE

7. This action arises under federal statutes including the Families First Coronavirus Response Act. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because claims brought herein constitute a federal question under the laws of the United States.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S. Code § 1367 because they arise out of the same circumstances as their federal claims and are based upon a common nucleus of operative fact.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this district and is subject to personal jurisdiction in this district for the purposes of this action.

## FACTUAL ALLEGATIONS

10. Ms. Williams began her employment with Defendant on or about March 23, 2020 as a customer service representative.

11. Ms. Williams always performed her job in a diligent and skillful manner and she was qualified for the position for which she was hired.

12. Around the time that Ms. Williams began her employment, North Carolina began issuing executive orders in response to the COVID-19 pandemic that required individuals to comply with guidelines enacted by the CDC to prevent the spread of the virus.

13. The executive orders included remaining under quarantine in the event that an individual tested positive for COVID-19 or displayed any of the typical symptoms of the virus.

14. In addition, Executive Order No. 118, Sections 2-3, and in accordance with the CARES Act, afforded individuals unable to work due to the COVID-19 pandemic the right to collect Pandemic Unemployment Assistance benefits.

15. On or about May 25, 2020, Ms. Williams notified Defendant that she was experiencing symptoms of COVID-19 and that she would be under quarantine pursuant to the Executive Order pending the outcome of her COVID-19 test.

16. Ms. Williams took leave pursuant to the FFCRA, and Defendant was aware of the reasons for her taking the leave.

17. Unfortunately, after experiencing symptoms for the next few weeks, Ms. Williams tested again on or about June 22, 2020, and the results showed that she had contracted the COVID-19 virus.

18. She promptly notified Defendant of the positive test result and need to remain off work and in quarantine.

19. Plaintiff requested, and received, benefits under the Families First Coronavirus Response Act for the time she was required to remain off work due to her COVID-19 diagnosis.

20. Throughout her time off, Ms. Williams remained in constant contact with Defendant, even providing medical support for the need for time off due to her diagnosis and need to remain in quarantine to prevent the spread of the virus.

21. In addition, and in accordance with the CARES Act and Executive Order No. 118, Sections 2-3, Ms. Williams filed for and was found approved for Pandemic Unemployment Assistance.

22. Ms. Williams was eligible to receive Pandemic Unemployment Assistance as she was unable to work because of her COVID-19 diagnosis.

23. Individuals who cannot work because of a diagnosis of COVID-19 or that must remain quarantined and unable to work due to COVID-19 are eligible to receive the Pandemic Unemployment Assistance.

24. Ms. Williams reported to her manager that she applied for the Pandemic Unemployment Assistance benefits. She was informed that Defendant was upset that she had applied for the benefits.

25. Defendant's attitude towards Plaintiff shifted due to her filing for the pandemic unemployment benefits and because she took leave under the FFCRA, and Defendant became hostile towards her. In addition, Defendant made negative comments questioning whether Ms. Williams was sick with COVID-19 and whether she needed to remain off work.

26. Despite Defendant's hostility, Ms. Williams continued to keep management updated on the status of her condition, providing medical documentation as necessary and when requested.

27. Ms. Williams was given multiple COVID-19 tests, which were all positive until her August 6, 2020 test, which she learned was negative on August 15, 2020.

28. She promptly notified Defendant of her ability to return to work immediately as she had tested negative for the virus.

29. Ms. Williams could not have returned to work prior to the receipt of the negative test result on August 15, 2020 since she was required to remain in quarantine, pursuant to the CDC guidelines, North Carolina's Executive Order, and the Company's policies.

30. On August 15, 2020, the same date she notified Defendant of her negative test result, Defendant terminated Plaintiff.

4

31. Defendant's decision to terminate Plaintiff was in retaliation for her applying for and collecting Pandemic Unemployment Assistance benefits and due to her taking time off pursuant to the Families First Coronavirus Response Act.

32. Pursuant to the FFCRA, it is unlawful "for any employer to discharge, discipline, or in any other manner discriminate against any employee who "takes leave in accordance with [the FFCRA.]" Families First Coronavirus Response Act, 2020 Enacted H.R. 6201, 116 Enacted H.R. 6201, Sec. 5104(1); *see also* 29 C.F.R. § 826.150(a) ("On return from Paid Sick Leave […], an Employee has a right to be restored to the same or an equivalent position in accordance with §§ 825.214 and 825.215 of this chapter." 29 C.F.R. § 826.130(a).

33. Section 5105(b) makes a willful violation of Section 5104 equivalent to a violation of section 15(a)(3) of the FLSA (29 U.S.C. § 215(a)(3)). Families First Coronavirus Response Act, 2020 Enacted H.R. 6201, 116 Enacted H.R. 6201, Sec. 5015(b); *see also* 29 C.F.R. § 826.150(b)(2).

34. At all times material hereto, Defendant was a "covered employer" as that term is defined under the FFCRA.

35. At all times material hereto, Plaintiff was an "employee" as that term is defined under the FFCRA.

36. Plaintiff has sustained damages as a result of Defendant's unlawful conduct as outlined above.

### FIRST CLAIM FOR RELIEF
### Public Policy Wrongful Discharge

37. Plaintiff incorporates by reference the preceding paragraphs.

38. North Carolina public policy provides that no citizen can lawfully do that which has a tendency to be injurious to the public or against the public good.

5

39. In the context of employment, it is unlawful for an employer to terminate an employee if it is contrary to law or public policy.

40. North Carolina law and Federal law gives Plaintiff the right to collect statutory unemployment benefits.

41. Plaintiff properly filed for Pandemic Unemployment Assistance benefits, which Defendant was aware of.

42. Defendant was angry that Plaintiff filed for and collected Pandemic Unemployment Assistance and acted on that anger by terminating her from her employment.

43. The decision to terminate Plaintiff was based on the filing of her legally-protected benefits.

44. Defendant's actions are in violation of North Carolina's public policy.

45. Plaintiff has sustained damages by way of lost wages, future wages, emotional distress damages, attorney fees and other compensatory damages.

## SECOND CLAIM FOR RELIEF
**Families First Coronavirus Response Act**
**(Retaliation)**

46. Plaintiff hereby incorporates by reference the preceding paragraphs.

47. The Families First Coronavirus Response Act provides certain protections to workers who exhibit symptoms of the COVID-19 virus, were diagnosed with the virus, or have to care for a child who's school or day care shut down due to the pandemic.

48. Plaintiff was an employee as defined by the Act and Defendant was her employer.

49. Plaintiff was entitled to take leave under the Act, which she did.

50. The Act makes it unlawful for an employer to terminate, discipline, or otherwise retaliate against an employee who has used the sick pay offered under the FFCRA.

51. Defendant violated the Act by retaliating against Plaintiff for taking her leave and receiving the pay by terminating her from her position on August 15, 2020 when she notified the Defendant she was able and ready to return to work.

52. Had Plaintiff not taken leave under the Act and had not received her benefits, she would not have been terminated.

53. Defendant's actions were intentional and willful.

54. Plaintiff has sustained damages as a result of Defendant's unlawful conduct as described herein.

### THIRD CLAIM FOR RELIEF
### Violation of the Fair Labor Standards Act
### (Retaliation)

55. Plaintiff hereby incorporates by reference the preceding paragraphs.

56. Plaintiff engaged in protected activity under the FLSA by taking leave for reasons covered under the FFCRA.

57. Defendant knew and/or had reason to know that Plaintiff took leave for reasons covered under the FFCRA, *i.e.*, because she was experiencing symptoms of COVID-19, seeking a medical diagnosis, and was quarantined pursuant to a health care provider's directive for reasons related to COVID-19.

58. Defendant took adverse action against Plaintiff when it terminated her on August 15, 2020.

59. Defendant terminated Plaintiff for missing work while she was experiencing symptoms of COVID-19, seeking a medical diagnosis, and subsequently quarantined pursuant to a health care provider's directive for reasons related to COVID-19.

60. At all times material hereto, Plaintiff was performing satisfactorily at the time of her termination, and there was no basis to terminate Plaintiff.

61. As a result of Defendant's actions, Plaintiff has suffered lost wages.

62. Plaintiff is entitled to recover, *inter alia*, payment of lost wages, liquidated damages, reasonable attorney's fees and costs.

63. Defendant's actions as alleged herein were done intentionally, willful and with reckless disregard for the law and for the impact such actions would have on Plaintiff. Therefore, an award of punitive and liquidated damages is appropriate and hereby demanded.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Crystal Williams respectfully request this Court enter judgment in her favor and grant them the following relief:

(1.) Order Defendant to compensate Plaintiff, reimburse her, and make her whole for any and all pay and benefits she would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary/pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

(2.) Award Plaintiff any and all other compensatory damages to make her whole for Defendant's illegal actions, including for emotional distress / pain and suffering;

(3.) Award Plaintiff liquidated damages for Defendant's willful violations;

(4.) Order Defendant to pay punitive damages to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or other employers from engaging in such misconduct in the future;

(5.) Award Plaintiff all reasonable costs and attorneys' fees incurred in connection with

this action;

(6.) Award Plaintiff pre-judgment and post-judgment interest;

(7.) Order that the costs of this action be taxed against Defendant;

(8.) Award Plaintiff such other and further equitable and legal relief as available and appropriate under the circumstances; and

(9.) Grant Plaintiff a trial of this matter by a jury.

Respectfully submitted,

*/s/ Michael C. Harman*
Michael C. Harman
**Harman Law, PLLC**
16507 Northcross Drive, Suite B
Huntersville, North Carolina 28078
Telephone: 704.885.5550
E-Mail: michael@harmanlawnc.com
*Attorney for Plaintiff*

9